Filed 5/28/26  D.N. v. Superior Court CA1/4
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| D.N.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Real Party in Interest. | A175870<br><br>(San Francisco City & County Super. Ct. No. JD24-3018) |

D.N. (mother) petitions for an extraordinary writ (Cal. Rules of Court, rule 8.452) in the dependency case of her child, M.-J.R.C. (minor).  Mother challenges the juvenile court's decision at the 18-month review hearing to terminate reunification services and set a hearing under Welfare and Institutions Code[1] section 366.26, arguing that substantial evidence does not support the trial court's determination that the San Francisco Human Services Agency (agency) offered her

---

[1] Statutory citations are to the Welfare and Institutions Code.

1

reasonable reunification services.  Mother also requests a stay of the section 366.26 hearing.  We find no error in the juvenile court's decision and will therefore deny the petition and stay request.

As the parties are already familiar with the factual and procedural history of the case and this opinion does not warrant publication, we need not recite the full history of the dependency proceedings here.  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851.)

At an 18-month review hearing in a dependency case, the court "shall determine by clear and convincing evidence whether reasonable services have been offered or provided to the parent or legal guardian."  (§ 366.22, subd. (a)(3).)  With an exception not relevant here, if the court does not return the child to the parent and it "finds that reasonable services have not been provided, . . . the court shall extend reunification services for an additional six months" (§ 366.22, subd. (b)(2)(A)) unless it finds, based on evidence from a mental health professional, that doing so would be detrimental to the child (*id.*, subd. (b)(2)(B)).

We review a trial court's reasonable services finding to determine whether there is substantial evidence from which the juvenile court could have made the finding by clear and convincing evidence.  (*B.D. v. Superior Court* (2025) 110 Cal.App.5th 1132, 1150, 1155.)  " 'Reunification services must be "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." ' [Citation.]  'The standard is not whether the services provided

2

were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] Thus, while 'services need not be perfect,' they 'should be tailored to the specific needs of the particular family.' [Citation.] In this regard, ' "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed)." ' " (*Id.* at p. 1151.)

Mother acknowledges she received and completed many services, such as parenting classes, domestic violence services, therapy, and drug testing. But she contends she did not receive reasonable services because the agency delayed in referring her for a psychological evaluation for nearly five months and the evaluation did not take place until May 2025.

Mother is correct that the psychological evaluation was improperly delayed, but her timeline is slightly off. The agency made the referral for the psychological evaluation on March 13, 2025. This was about three and a half months after the parties apparently agreed on November 26, 2024, to the agency's recommendation for an order for an evaluation, although we cannot determine precisely what the parties agreed to because there is no transcript of that hearing in the record. The referral

was just over three months after the trial court ordered it on December 10, 2024. The delay in arranging for the evaluation was due to a change in social workers assigned to the case, and it was unjustified. Mother is correct that the evaluation did not take place until May 2025. But the evaluation was originally scheduled for April 29, 2025. It had to be pushed back until mid-May 2025 because the psychologist needed to wait for mother to stabilize and consistently take her medication after her hospitalization on a section 5150 hold in mid-April 2025. The period between the March 2025 referral and the May 2025 evaluation is therefore not unreasonable.

Although the agency's three and a half-month delay in making the initial referral was unjustified, this does not mean the entire package of services offered to mother was unreasonable as of March 2026. The trial court began the 18-month review hearing in October 2025 and continued the hearing and extended mother's services by five months in recognition of the delay. This gave mother 25 months of services in total and essentially a full year of services after the initial psychological evaluation referral. This five-month extension of services, to a date well past the 18-month mark that usually marks the limit of reunification services for a child the age of the minor (§ 366.22, subd. (a)(1)), mitigated the agency's delay in arranging for the psychological evaluation.

Perhaps recognizing that a delay of three-plus months in one of many services made available to her a year before the end of 25 months of services does not on its face make her services as a whole unreasonable, mother argues that the delay was

4

prejudicial because if the agency had promptly referred her for the psychological evaluation, the agency would have had essential diagnostic information and been able to refer her to specialized services earlier.  Mother asserts that this potentially could have prevented the regression that led to mother being hospitalized in April 2025.  We are not convinced that this counterfactual, even if true, would make mother's services as a whole unreasonable, since mother is entitled to reasonable services, not perfect services.  (*B.D. v. Superior Court, supra*, 110 Cal.App.5th at p. 1151.)  But the record also does not support mother's assertion.

Mother cites no evidence to support her contention that a different set of services could have prevented her hospitalization.  As best we can tell from the record, mother was hospitalized for a psychotic break because she did not sleep for two days due to people throwing things at her apartment window.  Mother's marijuana use also could have been a trigger for her psychosis.  Mother does not explain what services she should have been given that would have alleviated these issues.

The psychological evaluation recommended that mother receive dialectical behavioral therapy and participate in an early psychosis clinic.  The early psychosis clinic was basically case management with a psychiatrist and other providers for people with mental health.  But mother already had the separate components of this case management team, since she had a therapist and a nurse practitioner prescribing her medications.  In any event, the waitlist for the early psychosis clinic was four to

5

six months.  Even if the agency had promptly referred mother for a psychological evaluation after the December 2024 order, she likely could not have completed the four sessions of the evaluation and started in the psychosis clinic much, if at all, before her April 2025 hospitalization.  The same is true of dialectical behavioral therapy.  The social worker said it was difficult to find a clinician that focuses on dialectical behavioral therapy, and she had not found one for mother in five months between the October 2025 and March 2026 dates of the 18-month review hearing.  There is no basis to think that if the agency had made the referral soon after December 2024 the social worker or mother would have been able to find such a clinician quickly enough for mother to make meaningful progress in the therapy before her April 2025 hospitalization.

Moreover, mother attended therapy from at least September 2023 (before the dependency case began) until October 2025, after she moved from San Francisco to Santa Rosa. Mother's therapy was not dialectical behavioral therapy, but her therapist for at least the last year of that period used a similar approach.  The only difference was that mother's therapist did not incorporate mindfulness, but mother had previously worked on mindfulness in her prior dependency case.  Most tellingly, mother's last therapist was unable to say how, if at all,  mother's symptoms would have changed if she had received dialectical behavioral therapy because external stressors had a significant impact on mother's ability to manage her emotions.  Given these circumstances, the record does not support mother's contention

6

that additional services between December 2024 and mother's April 2025 hospitalization would have averted the hospitalization. Mother's petition challenging the order setting a section 366.26 hearing therefore lacks merit and must be denied.

## DISPOSITION

The writ petition and stay request are denied. This decision is final as to this court immediately. (Cal. Rules of Court, rules 8.450(a), 8.490(b)(2)(A).)

BROWN, P. J.

WE CONCUR:

STREETER, J.
SWEET, J.[*]

*D.N. v. San Francisco Superior Court* (A175870)

---

[*] Judge of the Superior Court of Marin County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7